1   Mary E. McCutcheon (State Bar No. 099939)
      mmccutcheon@fbm.com
2   Karen P. Kimmey (State Bar No. 173284)
      kkimmey@fbm.com
3   Amanda D. Hairston (State Bar No. 251096)
      ahairston@fbm.com
4   Farella Braun & Martel LLP
    235 Montgomery Street, 17th Floor
5   San Francisco, CA  94104
    Telephone:  (415) 954-4400
6   Facsimile:  (415) 954-4480

7   Attorneys for Defendant NVIDIA CORPORATION

8

9                   UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11

12   NATIONAL UNION FIRE INSURANCE          Case No. C 09-2046 CW
     COMPANY OF PITTSBURGH, PA,
13                                          **NVIDIA'S NOTICE OF MOTION AND**
                        Plaintiff,          **MOTION TO DISMISS**
14
            vs.                             Date:     July 9, 2009
15                                          Time      2:00 p.m.
     NVIDIA CORPORATION,                    Dept.:    Courtroom 2
16
                        Defendant.
17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

I.    INTRODUCTION ................................................................................................................. 1

II.   STATEMENT OF FACTS .................................................................................................... 2

    A.    The Chip Failure Litigation .................................................................................... 2

    B.    The Insurance Policies ............................................................................................ 4

    C.    The State Court Coverage Action ........................................................................... 5

    D.    The Instant Coverage Action ................................................................................... 6

III.  LEGAL STANDARDS ........................................................................................................ 7

    A.    Federal Rule of Civil Procedure 12(b)(1) .............................................................. 7

    B.    Federal Rule of Civil Procedure 12(b)(6) .............................................................. 8

IV.   ARGUMENT ....................................................................................................................... 8

    A.    The Instant Case Does Not Meet the Jurisdictional Requirements And Must
        Be Dismissed ........................................................................................................... 8

        1.    There Is No Actual Case Or Controversy ................................................... 9

        2.    The *Brillhart* Factors Weigh Against Exercise of Discretion ................... 11

            a.    Dismissal Will Avoid Needless Determination of State Law ....... 11

            b.    Dismissal Will Preclude Any Attempt To Forum-Shop ............... 13

            c.    Dismissal Will Avoid Duplicative Litigation ............................... 13

        3.    Additional Factors Weigh In Favor of Dismissal ..................................... 14

    B.    Count One Should Be Dismissed Because Plaintiff Failed To Allege The
        Required Elements of Breach of the Duty to Cooperate ....................................... 15

CONCLUSION ................................................................................................................................ 16

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Allstate Indemnity Co. v. Lewis*,
   985 F. Supp. 1341 (N.D. Ala. 1997) ................................................................ 10

*American Economy Insurance Co. v. Williams*,
   805 F. Supp. 859 (D. Idaho 1992) .................................................................... 12

*American National Fire Insurance Co. v. Hungerford*,
   53 F.3d 1012 (9th Cir. 1995) ...................................................................... 11, 12

*American States Insurance Co. v. Kearns*,
   15 F.3d 142 (9th Cir. 1994) .......................................................................... 9, 14

*Automobile-Owner's Insurance Co. v. Toole*,
   947 F. Supp. 1557 (N.D. Ala. 1996) ................................................................ 10

*Bell Atlantic Corp. v. Twombly*,
   127 S. Ct. 1955 (2007) ...................................................................................... 8

*Beres v. Village of Huntley, Illinois*,
   824 F. Supp. 763 (N.D. Ill. 1992) .................................................................... 14

*Blake v. Dierdorff*,
   856 F.2d 1365 (9th Cir. 1988) ........................................................................... 8

*Brillhart v. Excess Insurance Co.*,
   316 U.S. 491 (1942) .................................................................... 1, 11, 14, 15

*Budget Rent-A-Car v. Crawford*,
   108 F.3d 1075 (9th Cir. 1997) ......................................................................... 11

*Chamberlain v. Allstate Insurance Co.*,
   931 F.2d 1361 (9th Cir. 1991) .................................................................... 11, 13

*Clegg v. Cult Awareness Network*,
   18 F.3d 752 (9th Cir. 1994) .............................................................................. 8

*Continental Casualty Co. v. Robsac Industries*,
   947 F.2d 1367 (9th Cir. 1991) ......................................................................... 12

*Employers Reinsurance Corporation v. Karussos*,
   65 F.3d 796 (9th Cir. 1995) ............................................................................. 12

*Exxon Corp. v. Heinze*,
   32 F.3d 1399 (9th Cir. 1994) ............................................................................. 9

*Geico v. Dizol*,
   133 F.3d 1220 (9th Cir. 1998) ......................................................................... 11

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

*Home Insurance Co. v. Perlberger,*
    900 F. Supp. 768 (E.D. Pa. 1995) ..................................................................... 10

*Hunt v. State Farm Mutual Automobile Insurance Co.,*
    655 F. Supp. 284 (D. Nev. 1987) ...................................................................... 10

*Miller Brewing Co. v. Ace U.S. Holdings, Inc.,*
    391 F. Supp. 2d 735 (E.D. Wisc. 2005) ........................................................... 7, 8

*Public Affairs Associates, Inc. v. Rickover,*
    369 U.S. 111, 82 S. Ct. 580, 7 L. Ed. 2d 604 (1962) ......................................... 9

*Public Service Commission v. Wycoff Co.,*
    344 U.S. 237, 73 S. Ct. 236, 97 L. Ed. 291 (1952) ............................................ 8

*Robertson v. Dean Witter Reynolds, Inc.,*
    749 F.2d 530 (9th Cir. 1984) .............................................................................. 8

*Societe de Conditionnement en Aluminum v. Hunter Engineering Co.,*
    655 F.2d 938 (9th Cir. 1981) .............................................................................. 9

*Thomas v. Union Carbide Agricultural Prod. Co.,*
    473 U.S. 568, 105 S. Ct. 3325 (1985) ............................................................... 9

*Thrifty Rent-A-Car Systems, Inc. v. Thrifty Automobile Sales of Charleston, Inc.,*
    849 F. Supp. 1083 (D.S.C. 1991) ...................................................................... 9

*Vorbeck v. Schicker,*
    660 F.2d 1260 (8th Cir. 1981) ........................................................................... 9

**STATE CASES**

*Ambat v. City and City of San Francisco,*
    No. C07-3622, 2007 WL. 3101323 (N.D. Cal. Oct. 22, 2007) ........................... 7

*Belz v. Clarendon America Insurance Co.,*
    158 Cal. App. 4th 615 (2008) .......................................................................... 16

*Burdnett v. Safeco Insurance Co. of Illinois,*
    227 Ill. App. 3d 167 (1992) ............................................................................. 10

*California County Superintendents of Schools Educational Association v. Marzion,*
    2009 WL. 513742 (N.D. Cal. 2009) ................................................................. 11

*Clemmer v. Hartford Insurance Co.,*
    22 Cal. 3d 865 (1978) ...................................................................................... 16

*Montrose Chemical Corp. v. Superior Court,*
    6 Cal. 4th 287 (1993) ............................................................................ 1, 6, 13

*Optovue Corp. v. Meditec, Inc.,*
    2007 WL. 2406885 (N.D. Cal. 2007) ............................................................... 15

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

NVIDIA'S MOTION TO DISMISS
Case No. 09-2046 CW

iii

24663\1954299.1

**FEDERAL STATUTES**

28 U.S.C. § 2201 ................................................................................ 8

Fed. R. Civ. Proc. 12(b)(1) .......................................................... 7, 8, 16

                    12(b)(6) .......................................................... 8, 15, 16

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE THAT** on July 9, 2009 at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 2 of the above-entitled Court, located at 1301 Clay Street, Oakland, California, before the Honorable Claudia Wilken, Defendant NVIDIA Corporation will, and hereby does, move for an Order dismissing the above-captioned matter.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

This Court should decline to exercise jurisdiction over Plaintiff National Union Fire Insurance Company of Pittsburgh, PA's ("National Union" or "Plaintiff") declaratory judgment action because there is not an actual case or controversy between the parties and because the factors outlined in the Supreme Court's decision in *Brillhart* weigh in favor of dismissal. A district court has ample discretion to decline jurisdiction in a case where there will be a needless determination of state law, dismissal will discourage forum-shopping, and where the court can avoid duplicative litigation.

Defendant NVIDIA Corporation ("NVIDIA" or "Defendant") is currently engaged in related consumer class actions pending in federal court and an insurance coverage action pending in state court. NVIDIA has taken the position that both the instant coverage action and the state court insurance coverage action should be stayed pursuant to the California Supreme Court's decision in *Montrose Chemical Corp. v. Superior Court*, 6 Cal. 4th 287 (1993) (*Montrose*).[1] Independent from the issue of whether the coverage cases should be stayed is whether Plaintiff's case should be heard by this Court. Plaintiff has brought its coverage action prematurely, as a case or controversy between the parties does not yet exist. Moreover, the adjudication of Plaintiff's claims here will require this Court to decide issues of state law, could promote forum-shopping, and will result in duplicative litigation. Both Supreme Court and Ninth Circuit case law counsel against a district court exercising its discretion to hear a case in such circumstances.

---

[1] In addition to this Motion to Dismiss, NVIDIA has concurrently filed a Motion to Stay the Coverage Action Pending the Resolution of the Underlying Class Actions in this Court pursuant to *Montrose*. NVIDIA seeks a stay in the alternative should the Court deny NVIDIA's Motion to Dismiss the Complaint

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

NVIDIA'S MOTION TO STAY INSURANCE COVERAGE
ACTION PENDING RESOLUTION OF UNDERLYING
ACTIONS – Case No. c09-2046 CW

1

24663\1954299.1

1  Finally, should this Court exercise jurisdiction over the Complaint, Count One of must be

2  dismissed for failure to state a claim since National Union did not allege all the required elements

3  of the cause of action.

4  **II.**  **STATEMENT OF FACTS**

5      **A.**  **The Chip Failure Litigation**

6      NVIDIA sells Graphics Processing Units ("GPUs") and media and communication

7  processor ("MCP") products. Such GPUs and MCPs are used in computers manufactured and

8  sold by NVIDIA's customers known as Original Equipment Manufacturers ("OEMs") and

9  Original Design Manufacturers ("ODMs"). On July 2, 2008, NVIDIA stated that it would take a

10  charge against revenue to cover anticipated customer warranty, repair, return, replacement and

11  other consequential costs and expenses arising from failures of certain notebook configurations of

12  these MCP and GPU products due to several factors, including (1) a weak material set of

13  die/package combination, (2) system thermal management designs, and (3) customer use patterns.

14  Upon learning of the MCP and GPU failures, NVIDIA took appropriate steps to remedy the

15  situation, which included working closely with its OEM customers. In addition, several of

16  NVIDIA's OEMs including Hewlett-Packard Co. ("HP") provided some extended warranties for

17  allegedly defective products.

18      Between September 12, 2008 and November 18, 2008, however the following cases

19  related to the chip failures were filed against NVIDIA and HP and transferred to United States

20  District Court for the Northern District of California: *Nakash v. NVIDIA Corp.*, *Feinstein v.*

21  *NVIDIA Corp.*, *Inicom Networks, Inc. v. NVIDIA Corp.*, *Olivos v. NVIDIA Corp. et al.*, *Sielicki v.*

22  *NVIDIA Corp.*, *Cormier v. NVIDIA Corp.*, *National Business Officers Association, Inc. v.*

23  *NVIDIA Corp. et al.*, *West v. NVIDIA Corp..* See Varian Decl., ¶ 3.

24      On February 25, 2009, District Court Judge James Ware consolidated these actions under

25  the caption *The NVIDIA GPU Litigation*, Case No. 08-04312 JW ("the Underlying Class

26  Actions") and a consolidated amended complaint was filed on May 6, 2009. *See* Varian Decl.,

27  Ex. A. On May 14, 2009, Judge Ware issued a Scheduling Order setting forth a number of

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

NVIDIA'S MOTION TO DISMISS
Case No. 09-2046 CW

2

24663\1954299.1

1  deadlines including a discovery cut-off date of July 12, 2010. *See* Varian Decl., Ex. B. NVIDIA

2  expects a trial date will be set for late 2010. *See* Varian Decl., ¶ 6

3       The consolidated complaint filed in the Underlying Class Actions alleges that NVIDIA

4  knowingly sold defective chips and purports to bring claims on behalf of all retail purchasers of

5  computers equipped with a defective NVIDIA GPU and/or MCP. *See* Varian Decl., Ex. A at ¶¶

6  1, 2.

7       Plaintiffs contend the chips are defective because under normal use, the chips cause

8  computers to generate excessive heat, which forces the system fan to run more often, increasing

9  ambient noise and reducing battery life. *Id*. at ¶ 5. In addition, plaintiffs claim that the excessive

10 heat affects other internal components like the central processing unit, which will "throttle down,"

11 decreasing overall system performance. *Id*. Plaintiffs claim that this defect results in the inability

12 of class members to use their computer for their intended purpose. *Id*. Plaintiffs also claim that

13 NVIDIA knew or should have known of the defect prior to selling or placing the NVIDIA GPUs

14 and MCPs into the stream of commerce. *Id*. at ¶ 2.

15      With respect to the Underlying Class Actions, NVIDIA disputes whether: (1) any

16 NVIDIA product at issue in the complaints was inherently defective; (2) assuming any products

17 were defective, that NVIDIA knowingly sold defective products or products containing defective

18 parts; (3) plaintiffs suffered any cognizable or recoverable damages, and (4) whether NVIDIA

19 caused any of the alleged damage. NVIDIA disputes the other allegations in the Underlying

20 Class Actions, including those that relate to consumer protection, unfair business practices, false

21 advertising and related statutes, as well as unjust enrichment and other common law theories of

22 liability. *See* Varian Decl., ¶ 9.

23      In addition to the Underlying Class Actions, NVIDIA's OEMs and ODMs have also

24 brought claims against NVIDIA related to the chip failures (referred to collectively as the "ODM

25 and OEM Claims"). *See* Varian Decl., ¶ 10. To date, no OEM or ODM has filed a complaint

26 against NVIDIA. *See Id*.

27

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

NVIDIA'S MOTION TO DISMISS
Case No. 09-2046 CW

3

24663\1954299.1

**B.**   **The Insurance Policies**

National Union issued Commercial General Liability Policy No. 721-8839 to NVIDIA effective January 31, 2008 to January 31, 2009 ("the National Union Primary Policy"). *See* National Union Primary Policy, a true and correct copy of which is attached hereto as Exhibit A to the Declaration of Amanda D. Hairston in Support of Defendant's Motion to Dismiss ("Hairston Decl."). National Union also issued to NVIDIA Commercial Umbrella Liability Policy No. 9835530, effective January 31, 2008 to January 31, 2009 ("the National Union Umbrella Policy") (herein collectively the "National Union Policies"). *See* National Union Umbrella Policy, a true and correct copy of which is attached hereto as Exhibit B to the Hairston Decl.

The National Union Primary Policy is subject to a limit of $1 million and states that National Union "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." *See Id.*, Ex. A, p.1. The Umbrella Policy is subject to a limit of $25 million and states that National Union "will pay on behalf of the Insured those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay as damages by reason of liability imposed by law because of ...property damage...to which this insurance applies..." See *Id.* at Ex. B, p. 1.

American Guarantee & Liability Insurance Company ("American Guarantee") issued an excess liability policy subject to a $25 million policy limit effective January 31, 2008 to January 31, 2009. *See Id.,* ¶ 3. The American Guarantee Policy provides a second layer of excess coverage over the National Union Policies. In addition, Great American Insurance Company of New York ("Great American") issued an excess liability policy subject to a $25 million limit ("Great American Policy"). *See* Great American Policy (Hairston Decl., Ex. C at 1). The Great American Policy provides a third layer of excess coverage over the policies issued by National Union and American Guarantee. *Id.* at 1.

The Great American Policy's Insuring Agreement provides, in pertinent part:

> [Great American] will pay on behalf of the Insured the amount of "loss" covered by this insurance in excess of the "Underlying Limits of Insurance" shown in Item 5. of the Declarations, subject

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

NVIDIA'S MOTION TO DISMISS
Case No. 09-2046 CW

4

24663\1954299.1

to Insuring Agreement Section II., Limits of Insurance.  Except for the terms, conditions, definitions and exclusions of this policy, the coverage provided by this policy will follow the "first underlying insurance."

*Id*. at Cl. I.

Under the terms of its policy, Great American agreed to pay "loss," which is defined as "those sums actually paid in the settlement or satisfaction of a claim which you are legally obligated to pay as damages after making proper deductions for all recoveries and salvage." *Id*. at Cl. V.

### C.    The State Court Coverage Action

On February 24, 2009, Great American filed a Complaint for Declaratory Relief and Rescission against NVIDIA in Santa Clara Superior Court.  *See* Great American Complaint (Hairston Decl, Ex. D).  Great American is seeking declarations that "rescission effectively renders the policy totally unenforceable from the outset as if no policy was ever issued, that there was never any coverage, and that no benefits are payable thereunder" and "the Great American excess liability policy provides no coverage for any loss, damage, harm settlement, attorney's fees, litigation expenses or any other cost or expense arising from or related to" the Underlying Class Actions, the OEM and ODM Claims, or any related internal expenses incurred by NVIDIA. *See id.* at 10.  Great American specifically alleges that prior to January 31, 2008, NVIDIA knew that "high field failure would be experienced in the future including after the time Great American issued is excess liability policy. *See id.*, ¶ 10.  In addition, Great American claims that NVIDIA "concealed information that was material to the risk being evaluated by Great American prior to binding coverage or issuing the policy" effective January 31, 2008 to January 31, 2009.

NVIDIA filed an Answer, Cross-Complaint, and Motion to Stay the Great American coverage action on April 1, 2009. *See* Hairston Decl., Exs. E, F, and G.  The hearing on the Motion is scheduled for June 8, 2009 at 9:00 a.m. in Santa Clara, California.  NVIDIA's Motion to Stay in the state court coverage action was filed pursuant to *Montrose Chemical Corp. v. Superior Court*, 6 Cal. 4th 287 (1993), and relies on the same factual and legal arguments made in

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

NVIDIA'S MOTION TO DISMISS
Case No. 09-2046 CW                                    5                                    24663\1954299.1

1    NVIDIA's Motion to Stay the instant coverage action filed concurrently with this Motion To

2    Dismiss.

3        **D.      The Instant Coverage Action**

4            Between August 2008 and October 2008, NVIDIA tendered the defense of the Underlying

5    Class Actions as they were filed to National Union under the National Union Primary Policy.  On

6    November 17, 2008, National Union formally agreed to defend NVIDIA in connection with the

7    Underlying Class Actions under the National Union Primary Policy subject to a full and complete

8    reservation of its rights.  To date, NVIDIA has not sought indemnification for any claims under

9    either of the National Union policies.

10           After giving notice of the claims under the National Union Policies, NVIDIA requested

11   that National Union issue waivers of the voluntary payments provisions with respect to

12   NVIDIA's ODMs and OEMs.  *See* Complaint ¶ 12.  National Union agreed to issue a waiver for

13   some but not all of the ODMs and OEMs.  *See Id.* ¶¶ 20, 21.  After NVIDIA issued numerous

14   additional requests for waivers, the parties met at NVIDIA headquarters on January 8, 2009.  *See*

15   *Id.* ¶ 38.  In an attempt to resolve the voluntary payments waiver issue, NVIDIA and National

16   Union agreed that NVIDIA would provide confidential information to National Union.  *See Id.*

17   As shown in the Complaint, which details the parties communications in this matter, this

18   confidential information was only discussed in the context of National Union's ability to evaluate

19   the reasonableness of the settlement for purposes of deciding whether to issue voluntary payments

20   waivers.  Those waivers and the confidential information were not submitted to National Union or

21   requested by National Union in the context of evaluating coverage under the policies.

22           On May 8, 2009, National Union filed a Complaint for Declaratory Relief against

23   NVIDIA in United States District Court for the Northern District of California.  In its Prefatory

24   Statement, National Union claims the suit seeks declaratory judgment as to certain claims

25   asserted by some of NVIDIA's ODMs and OEMs and other claimants that may bring or have

26   brought claims against NVIDIA (defined in the Complaint as "the Chip Claimants").  By listing

27   NVIDIA's specific ODMs and OEMs, it appears National Union is attempting to limit its

28   declaratory relief action to the OEM and ODM Claims although the definition of "Chip

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

NVIDIA'S MOTION TO DISMISS                              6                              24663\1954299.1
Case No. 09-2046 CW

1   Claimants" can be ready broadly to include the Underlying Class Actions. The Complaint states

2   that the Chip Claimants allege that graphic processing units designed and sold by NVIDIA and

3   used in notebook computers have failed (defined in the Complaint as "the Chip Claims").

4        National Union alleges that NVIDIA has breached the conditions of coverage including

5   the duty to cooperate by voluntarily making payments and/or assuming obligations without

6   National Union's consent and that NVIDIA's actions have voided coverage for the Chip Claims.

7   *See* Complaint at ¶¶ 75-77.  National Union also seeks declaratory judgment that its policies do

8   not cover the Chip Claims based on the definitions and exclusions contained in the National

9   Union Policies. *See Id.* at ¶¶ 78-110.  Finally, National Union alleges that NVIDIA is not

10  entitled to coverage under the policies because "NVIDIA, the insured, and/or authorized

11  employees knew that such 'property damage' had occurred, in whole or in part, prior to January

12  31, 2008," when the National Union Policies went into effect.  *See* Complaint at ¶ 88.

## III.    LEGAL STANDARDS

### A.    Federal Rule of Civil Procedure 12(b)(1)

15       A motion requesting that the Court decline or abstain from jurisdiction may be considered

16  under Federal Rule of Civil Procedure 12(b)(1).  *See Ambat v. City and City of San Francisco,*

17  2007 WL 3101323, at *2 (N.D. Cal. Oct. 22, 2007).  ("[N]umerous courts have also considered

18  abstention arguments within the framework of a motion to dismiss for lack of subject matter

19  jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1))"; *Miller Brewing Co. v. Ace*

20  *U.S. Holdings, Inc.,* 391 F. Supp. 2d 735, 739 (E.D. Wisc. 2005) ("A motion to dismiss or stay

21  based on an abstention doctrine raises the question of whether a court should exercise subject

22  matter jurisdiction."); *Beres v. Village of Huntley, Illinois,* 824 F. Supp. 763, 766 (N.D. Ill. 1992)

23  ("[A] motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1)

24  appears to be an appropriate method for raising the issue of abstention.").  The Rule 12(b)(1)

25  framework applies with equal force to the issue of whether a court should exercise jurisdiction

26  under the Declaratory Judgment Act.  *Miller Brewing,* 391 F. Supp. 2d at 740.

27

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

NVIDIA'S MOTION TO DISMISS
Case No. 09-2046 CW

7

24663\1954299.1

**B.      Federal Rule of Civil Procedure 12(b)(6)**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint "as a matter of law for one of two reasons:  (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim."  *See Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984).  Plaintiff must provide more than "a formulaic recitation of the elements of a cause of action" and its "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007).  In ruling on a motion to dismiss, all well-pled factual allegations generally are taken to be true, but the Court should not consider unsupported, conclusory allegations.  *See Blake v. Dierdorff*, 856 F.2d 1365, 1368 (9th Cir. 1988).  Nor should it accept legal or factual allegations based on unreasonable inferences.  *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

**IV.      ARGUMENT**

**A.      The Instant Case Does Not Meet the Jurisdictional Requirements And Must Be Dismissed**

A district court has broad discretion to decline jurisdiction over cases brought pursuant to the Declaratory Judgment Act.   The Declaratory Judgment Act provides in pertinent part:

> In a case of actual controversy within its jurisdiction…, any court of the United States, upon the filing of an appropriate pleading, ***may*** declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201 (emphasis added).

In *Public Service Commission v. Wycoff Co.*, 344 U.S. 237, 73 S. Ct. 236, 97 L. Ed. 291 (1952), the United States Supreme Court described the Declaratory Judgment Act as "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Id.* at 241, 73 S. Ct. at 239.  In *Public Affairs Associates, Inc. v. Rickover*, the Supreme Court declared that:

> The Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so…. Of course

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

NVIDIA'S MOTION TO DISMISS
Case No. 09-2046 CW

8

24663\1954299.1

a District Court cannot decline to entertain such an action as a matter of whim or personal disinclination. A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest.

369 U.S. 111, 82 S. Ct. 580, 7 L. Ed.2d 604 (1962).

In deciding whether to exercise discretion over such a case, a district court must perform a two-pronged inquiry. *American States Ins. Co. v. Kearns*, 15 F.3d 142 (9th Cir. 1994). First, "the court must consider whether there is a case or actual controversy within its jurisdiction." *Id.* at 143. The Ninth Circuit has held that this requirement is "identical to Article III's constitutional case or controversy requirement." *Id. citing Societe de Conditionnement en Aluminum v. Hunter Eng'g Co.*, 655 F.2d 938, 942 (9th Cir. 1981). Second, "if there is a case or controversy within its jurisdiction, the court must decide <u>whether</u> to exercise that discretion." *Id.* at 143-144 (emphasis added).

### 1.   There Is No Actual Case Or Controversy

In determining whether Plaintiff is entitled to bring this suit, this Court must at the outset determine whether this matter is ripe for review. The ripeness doctrine prevents premature adjudication. It is aimed at cases that do not yet have a concrete impact upon the parties. *See Thomas v. Union Carbide Agricultural Prod. Co.*, 473 U.S. 568, 580, 105 S. Ct. 3325, 3332 (1985); *Exxon Corp. v. Heinze*, 32 F.3d 1399, 1404 (9th Cir. 1994). The ripeness doctrine dictates that a federal court should not decide a controversy grounded in uncertain and contingent events that may not occur as anticipated or may not occur at all. *See Thrifty Rent-A-Car Systems, Inc. v. Thrifty Auto Sales of Charleston, Inc.*, 849 F. Supp. 1083 (D.S.C. 1991). The mere threat of potential injury is too contingent or remote to support present adjudication. *See Vorbeck v. Schicker*, 660 F.2d 1260 (8th Cir. 1981), cert. denied, 455 U.S. 921 (1982).

Federal and state courts have held that when an insurer is defending an underlying action, there generally is not an actual controversy between the insurer and its insured concerning potential indemnity. Until and unless the insured is finally held liable, there is nothing to indemnify and "[i]n general, a declaratory judgment action brought prior to a determination of the insured's liability is premature since the question to be determined is not then ripe for

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

NVIDIA'S MOTION TO DISMISS
Case No. 09-2046 CW

9

24663\1954299.1

adjudication." *Burdnett v. Safeco Ins. Co. of Illinois*, 227 Ill. App. 3d 167 (1992); *see also Home Ins. Co. v. Perlberger*, 900 F. Supp. 768 (E.D. Pa. 1995) (holding that while an underlying state court action was pending against the insured, the duty to defend issue was ripe but the issue of indemnity was "contingent" and "not ripe for judicial determination."); *Auto-Owner's Ins. Co. v. Toole*, 947 F. Supp. 1557 (N.D. Ala. 1996) (dismissing declaratory judgment action concerning insurer indemnity before completion of the underlying lawsuit); *Allstate Indemnity Co. v. Lewis*, 985 F. Supp. 1341 (N.D. Ala. 1997) (holding insurer had duty to defend but that issue of indemnity was not ripe until and unless insured was found liable in the underlying action); *Hunt v. State Farm Mutual Automobile Ins. Co.*, 655 F. Supp. 284 (D. Nev. 1987) (dismissing declaratory judgment action for indemnity brought against an insurer stating that "it is not the function of a United States District Court to sit in judgment of these nice and intriguing questions which today may readily be imagined, but may never in fact come to pass.").

To date, NVIDIA has not asked National Union to assume an indemnification obligation with respect to the ODM and OEM Claims or the Underlying Class Actions.  In this insurance coverage action, however, Plaintiff has asked for  declarations that (1) NVIDIA's actions have voided coverage or, in the alternative, "compelling production of material information with respect to the Chip Claims so that National Union can evaluate coverage and whether or to what extent it has any obligations to NVIDIA;" (2) "National Union has no duty to indemnify NVIDIA for any damage sought in the NVIDIA Chip Claims;" and (3) that various provisions in the National Union Policies preclude coverage for the Chip Claims. *See* Complaint at ¶¶ 20-22. Nowhere in the Complaint does Plaintiff challenge its ongoing duty to defend the Underlying Class Actions, which it accepted on November 17, 2008.  Moreover, Plaintiff attempted to define the Chip Claimants as only NVIDIA's OEMs and ODMs and not the consumers in the Underlying Class Actions.  NVIDIA, however, has not asked National Union to assume any defense obligations with respect to the ODM and OEM Claims. As a result, the declarations that National Union seek are about coverage obligations that may never come to pass.  Until and unless NVIDIA requests indemnification from National Union for any amounts related to the Chip Claims or National Union challenges its defense obligation for the Underlying Class

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

NVIDIA'S MOTION TO DISMISS
Case No. 09-2046 CW

10

24663\1954299.1

1  Actions, this action is uncertain and is contingent on events that may not occur as anticipated or

2  occur at all. As a result, this Court should dismiss National Union's Complaint for lack of

3  jurisdiction because its claims are not ripe.

### 2. The *Brillhart* Factors Weigh Against Exercise of Discretion

5  Even if the Court does find that an actual case or controversy presently exists, its decision

6  to exercise jurisdiction over this declaratory relief action is still discretionary and a federal court

7  "must balance concerns of judicial administration, comity, and fairness to the litigants."

8  *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361 (9th Cir. 1991) *citing Brillhart v. Excess Ins. Co.*,

9  316 U.S. 491 (1942); see also *California County Superintendents of Schools Educational Ass'n v.*

10 *Marzion*, 2009 WL 513742 (N.D. Cal. 2009). In addition, "when a state court action is pending

11 presenting the same issue of state law as is presented in a federal declaratory suit 'there exists a

12 presumption that the entire suit shall be heard in state court.'"[2] *Id.* at 1366-67.

13 In addition to the broad policy concerns outlined above, the *Chamberlain* court identified

14 three specific factors a district court should weigh in deciding whether to exercise jurisdiction

15 over a declaratory judgment action including: (1) avoiding having federal courts needlessly

16 determine issues of state law; (2) discouraging parties' attempts to "forum shop;" and (3)

17 avoiding duplicative litigation. *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361 (9th Cir. 1991).

### a. Dismissal Will Avoid Needless Determination of State Law

19 In *American Nat. Fire Ins. Co. v. Hungerford*, 53 F.3d 1012, 1017 (9th Cir. 1995), the

20 Ninth Circuit held that a district court, should not hear an insurance action "when an ongoing

21 state proceeding involves a state law issue that is predicated on the same factual transaction or

22 occurrence involved in a matter pending before federal court." The *Hungerford* court affirmed

23 the concept that federal courts should "decline to assert jurisdiction in insurance coverage and

24 other declaratory relief actions presenting only issues of state law during the pendency of parallel

---

[2] The district court's discretion to decline jurisdiction "is not dependent on the pendency of a state court proceeding at the time a federal declaratory judgment is filed" and the district court must examine all of the relevant *Brillhart* factors in existence at the time it exercise discretionary jurisdiction including "comity, sound judicial administration, and the policy against forum shopping" before ruling on the merits of a claim for declaratory relief. *Budget Rent-A-Car v. Crawford*, 108 F.3d 1075, 1079 (9th Cir. 1997) overruled on other grounds by *Geico v. Dizol*, 133 F.3d 1220, 1224 (9th Cir. 1998).

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

NVIDIA'S MOTION TO DISMISS
Case No. 09-2046 CW

11

24663\1954299.1

1    proceedings in state court' unless there are 'circumstances present to warrant an exception to that

2    rule." 53 F.3d at 1019 (emphasis added). *See also Employers Reinsurance Corporation v.*

3    *Karussos*, 65 F.3d 796, 798 (9th Cir. 1995), overruled on other grounds, (remanding declaratory

4    relief insurance coverage action with instructions to decline jurisdiction and dismiss); *American*

5    *Economy Ins. Co. v. Williams*, 805 F. Supp. 859, 864 (D. Idaho 1992) (declining to exercise

6    jurisdiction where the federal insurance coverage action "parallel[ed] the state action in the sense

7    that the ultimate legal determination in each depend[ed] upon the same facts).

8         Here, the underlying state coverage action involves a different insurance carrier but the

9    same policy language and the same facts.  The parallels are particularly strong since Great

10   American provided umbrella insurance over the National Union Policies and the policies share

11   common terms.  The ultimate legal determination of coverage in both cases will come down to

12   the same set of operative facts since both carriers allege that NVIDIA is not entitled to coverage

13   under the insurance policies because of what the carriers allege NVIDIA knew at the time it

14   applied for the insurance policies effective from  January 31, 2008 to January 31, 2009 policy

15   year. *See* Complaint at ¶ 88; Hairston Decl. at Ex. D, ¶ 17.  The fact that the same factual

16   transaction or occurrence is at issue in an underlying state coverage action weighs against the

17   exercise of jurisdiction over this federal coverage action.

18        In *Continental Casualty Co. v. Robsac Industries*, the Ninth Circuit held that the district

19   court should not have exercised its discretion to grant an insurer declaratory relief in light of a

20   pending parallel state action concerning coverage.  947 F.2d 1367 (9th Cir. 1991).  In *Robsac*, the

21   underlying state action involved the same parties as the federal action and were both governed by

22   insurance law, "an area that Congress has expressly left to the states."  In addition its general

23   concern about federal court determining state law, the *Robsac* court noted that "California has

24   established a complex scheme of insurance regulation."  *Id.* at 1371.

25        Dismissing this federal action is the only way to avoid needless determination of state law.

26   None of Plaintiff's claims rely on federal law. The adjudication of this lawsuit will require

27   substantial inquiry and analysis of existing California state law involving insurance coverage.

28   The insurance policies at issue are governed by California law and the same legal and factual

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

NVIDIA'S MOTION TO DISMISS
Case No. 09-2046 CW                     12                          24663\1954299.1

1   issues are currently pending before a California state court.  Even in the absence of the state court

2   coverage action.  The fact that this case turns exclusively on interpretations of state law would

3   also weigh heavily against this Court exercising jurisdiction over Plaintiff's declaratory relief

4   claims.

5                    b.      Dismissal Will Preclude Any Attempt To Forum-Shop

6        The *Chamberlain* court outlined the "concern that parties could attempt to avoid state

7   court proceedings by filing declaratory relief actions in federal court." 931 F.2d at 1367.  The

8   court found that "this kind of forum shopping could be avoided by requiring district courts to

9   inquire into the availability of state court proceedings to resolve all issues without federal

10  intervention." *Id.*

11       Here, NVIDIA has taken the position that both insurance coverage actions should be

12  stayed pursuant to *Montrose*.  However, should National Union's suit proceed, it should pursue its

13  claim in state court.  Allowing Plaintiff to maintain its case in federal court, subject to a *Montrose*

14  stay or not, would encourage forum-shopping for insurers who view litigating in federal court as

15  giving them a tactical advantage.  Since the insurance coverage issues here can be resolved

16  without federal intervention and there is a concern that exercising jurisdiction will encourage

17  forum-shopping, this factor also weighs in favor of declining jurisdiction.

18                    c.      Dismissal Will Avoid Duplicative Litigation

19       In *Robsac*, the Ninth Circuit held that it was clear the policy of avoidance of duplicative

20  litigation "would be frustrated by permitting [a] federal action to go forward during the pendency

21  of the state court action because the federal declaratory action [was] virtually the mirror image of

22  the state suit" and that "all of the issues presented by the declaratory judgment action could be

23  resolved by the state court." 947 F.2d at 1373.  The *Robsac* court found that allowing the federal

24  declaratory action to proceed in light of the state action would "waste judicial resources." *Id.*

25       The same is true here.  Allowing this case to proceed while the state court coverage action

26  is pending would certainly result in duplicative, and potentially conflicting, litigation.  Although

27  National Union may have limited its declaratory relief action to the ODM and OEM Claims, the

28  litigation would still be duplicative because the instant coverage action, the state court coverage

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

NVIDIA'S MOTION TO DISMISS
Case No. 09-2046 CW

13

24663\1954299.1

1  action, the Underlying Class Actions, the ODM and OEM Claims, and the Securities Actions all

2  involve the same legal and factual issues – namely what NVIDIA knew about the chip failures

3  and when NVIDIA knew it.  National Union puts the exact same factual issue in play by claiming

4  that NVIDIA had material information about the chip failures at the time it applied for the

5  National Union policy in January 2008 and failed to adequately disclose that information.

6      It would be a waste of judicial resources to have two courts decide identical legal and

7  factual issues including the preliminary issue of whether a stay is warranted pending the outcome

8  of the Underlying Class Actions and later relevant discovery requests.  In addition, if both actions

9  proceed beyond discovery, the two courts would have to rule on the same policy provisions,

10  California insurance coverage law, and the operative facts to determine whether the insurance

11  policies provide coverage.  The risk of inconsistent or conflicting results is especially high here

12  where Great American issued an umbrella insurance policy that applies in excess of the National

13  Union Policies and relies on several of the terms of the National Union Policies.  Since

14  duplicative litigation cannot be avoided, this factor also weighs against the exercise of

15  jurisdiction.

16          **3.    Additional Factors Weigh In Favor of Dismissal**

17      In *Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998), the Ninth

18  Circuit outlined additional concerns when a district court is deciding whether to exercise

19  jurisdiction in a declaratory relief action.  In addition to the *Brillhart* factors above, a district

20  should consider:

21              whether the declaratory action will settle all aspects of the
               controversy; whether the declaratory action will serve a useful

22              purpose in clarifying the legal relations at issue; whether the
               declaratory action is being sought merely for the purposes of

23              procedural fencing or to obtain a 'res judicata' advantage; or
               whether the use of a declaratory action will result in entanglement

24              between the federal and state court systems.  In addition, the district
               court might also consider the convenience of the parties, and the

25              availability and relative convenience of other remedies.

26  *Id.* at 1225 n.5. quoting *American States Ins. Co. v. Kearns*, 15 F.3d 142, 145 (9th Cir. 1994); *see*

27  *also Optovue Corp. v. Meditec, Inc.*, 2007 WL 2406885 (N.D. Cal. 2007).

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

NVIDIA'S MOTION TO DISMISS                    14                    24663\1954299.1
Case No. 09-2046 CW

1     Here, the declaratory action will not settle all aspects of the controversy since the

2   controversy has not yet been defined.  Since NVIDIA has not asked for indemnification from

3   National Union, even National Union's success on the merits may not prelude an insurance

4   coverage dispute between the parties later.  Without a claim for indemnification and the

5   resolution of the Underlying Class Actions, allowing this case to go forward will not necessarily

6   resolve all future claims.  In addition, allowing this declaratory action to continue would result in

7   entanglement between the federal and state courts since the exact same legal and factual issues

8   are currently pending in the state court coverage action.  Although NVIDIA believes that all

9   coverage actions should be stayed pending the resolution of the Underlying Class Actions, this

10  Court should consider that National Union may seek the same relief in state court where its action

11  would not run afoul of the factors outline in both *Brillhart* and *American States*.

12
**B.      Count One Should Be Dismissed Because Plaintiff Failed To Allege The
13          Required Elements of Breach of the Duty to Cooperate**

14     Count One of Plaintiff's Complaint should be dismissed because Plaintiff did not plead all

15  of the required elements and fails to state a judicially cognizable claim under Rule 12(b)(6) of the

16  Federal Rules of Civil Procedure.  In Count One, Plaintiff alleges that NVIDIA "has breached the

17  conditions of coverage contained in the National Union Policies by failing to authorize National

18  Union to obtain records and other information with respect to the Chip Claims and by failing to

19  cooperate with National Union in the investigation of the Chip Claims." *See* Complaint at ¶ 75.

20  In addition, National Union claims that "NVIDIA has breeched [sic] the foregoing conditions by

21  voluntarily making payments and/or assuming obligations without National Union's consent in

22  settling or agreeing to the material terms of settlement, with respect to the Chip Claims." *See Id.*

23  at ¶ 76.

24     The California Supreme Court has held that to enforce the notice and cooperation

25  provisions in a policy, an insurer must carry the burden of demonstrating actual and substantial

26  prejudice to its rights under the policy. *See Clemmer v. Hartford Ins. Co.*, 22 Cal. 3d 865, 881-82

27  (1978). *See also Belz v. Clarendon America Ins. Co.*, 158 Cal. App. 4th 615, 625 (2008) ("Under

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

NVIDIA'S MOTION TO DISMISS
Case No. 09-2046 CW                          15                          24663\1954299.1

1    California law, an insured's breach of a notice provision or a cooperation clause does not excuse

2    the insurer's performance unless the insurer can show that it suffered prejudice.").

3         In its Complaint, National Union fails to make even the most basic allegation that it has

4    been prejudiced by NVIDIA's alleged breaches of the duty to cooperate much less that National

5    Union has suffered "actual and substantial prejudice" as the result of NVIDIA's actions.  As a

6    result this Count must be dismissed for failure to state a claim.

7                                    **CONCLUSION**

8         Plaintiff's Complaint does meet either the jurisdictional standard nor the discretionary

9    standard and this Court should exercise its discretion dismiss it for lack of jurisdiction under

10   Federal Rule of Civil Procedure 12(b)(1).  The *Brillhart* factors – including needless

11   determination of state law, discouraging forum-shopping, and avoiding duplicative litigation –

12   weigh in favor of dismissal.  Furthermore, Count One of National Union's complaint should be

13   dismissed with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(6) for failure to state

14   a claim since Plaintiff failed to plead an essential element of their cause of action.

15

16

17   DATED:  June 1, 2009                        FARELLA BRAUN & MARTEL LLP

18

19                                               By:  /s/ Amanda D. Hairston
                                                      Amanda D. Hairston
20
                                                 Attorneys for Defendant, NVIDIA
21                                               CORPORATION

22

23

24

25

26

27

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

NVIDIA'S MOTION TO DISMISS
Case No. 09-2046 CW                         16                        24663\1954299.1