IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.,

    Plaintiff,

  v.

NVIDIA CORPORATION,

    Defendant.
                                       /

No. C 09-02046 CW

ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS AND STAY

    This declaratory judgment action involves a dispute over whether Defendant NVIDIA Corporation has breached various clauses of the insurance policies it maintains with Plaintiff National Union Fire Insurance Company of Pittsburgh, PA. Defendant has filed a motion to dismiss, arguing that the Court should decline to exercise jurisdiction over the matter. Defendant has also filed a motion to stay the case pending the resolution of a related class action lawsuit. Plaintiff opposes the motions. The matter was heard on July 9, 2009. Having considered oral argument and all of the papers submitted by the parties, the Court denies the motions to dismiss and stay.

BACKGROUND

    Defendant sells graphics processing units (GPU) and media communication processor (MPC) products. Computer manufacturers

incorporate GPUs and MPCs into their final product.  Over the past year, many computer manufacturers and individual computer owners have complained to Defendant that their GPUs and MPCs were not working properly.  Between September 12, 2008 and November 18, 2008, eight class action lawsuits were filed against Defendant about these products.  On February 25, 2009, United States District Court Judge James Ware consolidated the cases in this district under the caption <u>The NVIDIA GPU Litigation</u>, Case No. 08-04312, and a consolidated amended complaint was filed on May 6, 2009 (Consolidated Class Action).  Plaintiff is defending Defendant in the Consolidated Class Action.  The Consolidated Class Action purports to bring claims on behalf of all retail purchasers of computers equipped with a defective NVIDIA GPU or MCP.  In that case, the plaintiffs allege that NVIDIA knowingly sold defective GPU and MCP chips which, after installation in notebook computers, caused the graphics to malfunction.

   The current case concerns a related issue.  As a result of the malfunctions in GPUs and MCPs, the companies for whom Defendant designed and sold such GPUs and MCPs began to receive requests from end users of notebook computers to repair the problem.  These companies will be referred to as Chip Claimants.  On at least seven occasions, Defendant tendered to Plaintiff notices of claims made by Chip Claimants against Defendant.  The claims based on such malfunctions sought defense, indemnity, compensation for repairs and extended warranties, and damages.  Defendant also requested that Plaintiff waive conditions in the insurance policies that prevent any insured from voluntarily assuming any obligation or making any payment without Plaintiff's consent.  This aspect of the

policy is called a consent condition. Plaintiff did not agree to waive the consent conditions with respect to some of the claims.

Plaintiff requested detailed information about the nature, extent, timing and causes of the claims tendered by Defendant. Defendant refused to provide the information requested for some of the claims. At this juncture, Plaintiff has not consented to any settlements nor has it been permitted to participate in any settlement negotiations between Defendant and the Chip Claimants. To date, Defendant has not sought indemnification from Plaintiff with respect to settlements that Defendant has unilaterally negotiated with some of the Chip Claimants.

In the present lawsuit, Plaintiff now seeks a declaration concerning its coverage obligations, if any, owed to Defendant with respect to claims arising from its product malfunctions. Plaintiff asserts that it does not have a legal obligation to pay damages because the harm Defendant incurred does not constitute "property damage" as defined in the insurance policies described below. Plaintiff also alleges that Defendant breached the "voluntary payments" and "cooperation" provisions of the insurance policies. Further, Plaintiff alleges that Defendant's refusal to grant Plaintiff access to the settlement process with Chip Claimants will prevent Plaintiff from determining if its policies are implicated.

There are two relevant insurance policies at issue between the parties: Commercial General Liability Policy No. 721-8839 (CGL Policy) and Commercial Umbrella Liability Policy No. 9835530 (Umbrella Policy). The CGL Policy is subject to a limit of $1 million and the Umbrella Policy is subject to a limit of $25 million. The CGL Policy provides, in pertinent part,

3

>We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. . . . We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

Compl., Exh. 1 at 7. The CGL Policy and the Umbrella policy also list the insured's "duties in the event of an occurrence, offense, claim, or suit:"

>(c) You and any other involved insured must:
>(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
>(2) Authorize us to obtain records and other information;
>(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and
>(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.
>(d) No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than first aid, without our consent.

Id. at 15, Exh. 2 at 17.

Also relevant to this lawsuit are two other insurance policies. American Guarantee & Liability Insurance Company issued an excess liability policy subject to a $25 million limit. This policy provides a second layer of excess coverage over Plaintiff's policies. Further, Great American Insurance Company of New York issued an excess liability policy subject to a $25 million limit. This policy provides a third layer of excess coverage over the policies issued by Plaintiff and American Guarantee.

On February 24, 2009, Great American filed a complaint for declaratory relief and rescission against Defendant in Santa Clara Superior Court. Great American Ins. Co. of New York v. NVIDIA Corp., No 109-CV-133413. Great American alleges that Defendant concealed information that was material to the risk being evaluated

4

by Great American prior to issuing the policy.  Specifically, Great American alleges that prior to the issuance of its insurance policy, Defendant knew and failed to disclose to Great American that the GPUs sold to customers and incorporated into notebook computers were failing.[1]  Plaintiff is not a party to that lawsuit.

LEGAL STANDARD

I.   Motion to Dismiss for Lack of Subject Matter Jurisdiction

Subject matter jurisdiction is a threshold issue which goes to the power of the court to hear the case.  Federal subject matter jurisdiction must exist at the time the action is commenced. Morongo Band of Mission Indians v. Cal. State Bd. of Equalization, 858 F.2d 1376, 1380 (9th Cir. 1988).  A federal court is presumed to lack subject matter jurisdiction until the contrary affirmatively appears.  Stock W., Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989).

Dismissal is appropriate under Rule 12(b)(1) when the district court lacks subject matter jurisdiction over the claim.  Fed. R. Civ. P. 12(b)(1).  A Rule 12(b)(1) motion may either attack the sufficiency of the pleadings to establish federal jurisdiction, or allege an actual lack of jurisdiction which exists despite the formal sufficiency of the complaint.  Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979); Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987).

II.  Motion to Dismiss for Failure to State a Claim

A complaint must contain a "short and plain statement of the

---

[1] The Court takes judicial notice of the fact that, on June 9, 2009, Santa Clara Superior Court Judge Kevin Murphy granted Defendant's motion to stay that case pending the outcome of the underlying Consolidated Class Action.

5

claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Dismissal under Rule 12(b)(6) is appropriate if the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990). In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990). Leave to amend should be liberally granted, but an amended complaint cannot allege facts inconsistent with the challenged pleading. Id. at 296-97.

DISCUSSION

II. Declaratory Judgment Act and Ripeness

Defendant argues that Plaintiff's declaratory relief claims are not ripe for review. The Declaratory Judgment Act permits a federal court to "declare the rights and other legal relations" of parties to "a case of actual controversy." 28 U.S.C. § 2201; see Wickland Oil Terminals v. Asarco, Inc., 792 F.2d 887, 893 (9th Cir.

6

1986).  The "actual controversy" requirement of the Declaratory Judgment Act is the same as the "case or controversy" requirement of Article III of the United States Constitution.  <u>American States Ins. Co. v. Kearns</u>, 15 F.3d 142, 143 (9th Cir. 1993).

Under the Declaratory Judgment Act, a two-part test is used to determine whether jurisdiction over a claim for a declaratory judgment is appropriate.  <u>Principal Life Ins. Co. v. Robinson</u>, 394 F.3d 665, 669 (9th Cir. 2005).  First, the Court must determine if an actual case or controversy exists within its jurisdiction.  <u>Id.</u>  Second, if so, the Court must decide whether to exercise its jurisdiction.  <u>Id.</u>

A suit for declaratory relief is appropriate if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of declaratory judgment.  A case is ripe where the essential facts establishing the right to declaratory relief have already occurred."  <u>Boeing Co. v. Cascade Corp.</u>, 207 F.3d 1177, 1192 (9th Cir. 2000).

Defendant argues that there is no case or controversy in the present case because Defendant has not asked Plaintiff to pay indemnity for Defendant's unilateral settlements with some of the Chip Claimants.  However, the lack of an indemnification claim does not preclude the existence of a case or controversy.  Here, the CGL Policy gives Plaintiff the right to investigate and settle claims that Defendant has tendered to Plaintiff concerning allegedly defective GPUs.  Plaintiff's alleged injury stems from the possibility of having to honor a policy no longer in force due to

7

Defendant's breach of these provisions.  To "have standing to proceed, [Plaintiff] only had to allege it was threatened with injury by virtue of being held to an invalid policy."  <u>Government Employees Ins. Co. v. Dizon</u>, 133 F.3d 1220, 1222 n.2 (9th Cir. 1998).  The Ninth Circuit has "consistently held that a dispute between an insurer and its insureds over the duties imposed by an insurance contract satisfies Article III's case and controversy requirement."  <u>Id.</u>  Therefore, the Court concludes that the case is ripe for adjudication.

The Court now turns its attention to whether to exercise its jurisdiction over the matter.  "Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties."  <u>Brillhart v. Excess Ins. Co.</u>, 316 U.S. 491, 495 (1942).  Further, "when a party requests declaratory relief in federal court and a suit is pending in state court presenting the same state law issues, there exists a presumption that the entire suit should be heard in state court."  <u>Chamberlain v. Allstate Ins. Co.</u>, 931 F.2d 1361, 1366-67 (citing <u>Brillhart</u>, 316 U.S. at 495).  In <u>Brillhart</u>, the Supreme Court identified several factors for the district court to consider when determining whether to exercise jurisdiction over a declaratory judgment action, and the Ninth Circuit has affirmed that "the <u>Brillhart</u> factors remain the philosophical touchstone for the district court."  <u>Government Employees</u>, 133 F.3d at 1225.  "The District court should avoid needless determination of State law issues; it should discourage litigants from filing declaratory actions as a means of forum

8

1  shopping; and it should avoid duplicative litigation." Id.
2  (internal citations omitted). The Ninth Circuit has also suggested
3  considerations in addition to the Brillhart factors that may assist
4  in deciding whether to exercise jurisdiction, including:

> [W]hether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a "res judicata" advantage; or whether the use of a declaratory action will result in entanglement between the federal and State court systems.

Id. at 1225 n.5.

Defendant argues that the Brillhart factors weigh against the Court's exercise of discretion because the state coverage action, in which Great American is suing Defendant for failing to disclose that it knew the GPUs it sold to customers were malfunctioning, involves the same set of facts as the present lawsuit. However, Plaintiff is not even a party in the state action. That case involves a different insurance carrier and policy and seeks different coverage determinations. The Great American policy was a third layer of excess coverage over Plaintiff's policies. Unlike Plaintiff's policies, the Great American Policy only provides coverage for "loss," which is defined as "those sums actually paid in settlement or satisfaction of a claim which you are legally obligated to pay as damages after making proper deductions for all recoveries and salvage." Hairston Decl. Ex. C at 18. Moreover, the state court action could result in a judgment that does not concern the grounds raised in the instant lawsuit. Therefore, it is not clear whether the state action will provide an adequate forum for Plaintiff to obtain the relief that it is seeking in the

9

present case.  Although the factual underpinning of the state action and the present case is similar, the differences are too great to consider them parallel proceedings for purposes of the Declaratory Judgment Act.  Therefore, the Court concludes that the present suit is a proper use of the Declaratory Judgment Act, 28 U.S.C. § 2201, to resolve the insurance coverage claims raised by Plaintiff.

II.   Motion to Dismiss

Defendant argues that count one of Plaintiff's complaint should be dismissed because Plaintiff did not adequately plead all of the required elements of the claim.  In this count, Plaintiff seeks a declaration from the Court that Defendant breached the cooperation clause and the voluntary payments clause of the insurance policies.  California courts have consistently held that an insurer need not demonstrate prejudice in order to sue under a voluntary payments clause.  Low v. Golden Eagle Ins. Co., 110 Cal. App. 4th 1532, 1544-45 (2003).  However, an insured's breach of "a cooperation clause does not excuse the insurer's performance unless the insurer can show that it suffered prejudice."  Belz v. Clarendon America Ins. Co., 158 Cal. App. 4th 615, 625 (2007).  Here, Plaintiff has failed adequately to plead that it suffered prejudice; however, Plaintiff does not seek to excuse its performance.  Plaintiff merely requests that the Court declare that Defendant must comply with the cooperation clause.  No prejudice need be shown to justify such a declaration.  Therefore, the Court denies Defendant's motion to dismiss count one.

III.  Motion to Stay

"To eliminate the risk of inconsistent factual determination

10

that could prejudice the insured, a stay of the declaratory relief action pending resolution of the third party suit is appropriate when the coverage question turns on facts to be litigated in the underlying action." <u>Montrose Chemical Corp. v. Superior Court</u>, 6 Cal. 4th 287, 301 (1993).  Three possible concerns arise when considering the trial of coverage issues which necessarily turn upon facts to be litigated in another pending lawsuit.

> <u>First</u>, the insurer, who is supposed to be on the side of the insured and with whom there is a special relationship, effectively attacks its insured and thus gives aid and comfort to the claimant in the [pending] suit; <u>second</u>, such a circumstance requires the insured to fight a two-front war, litigating not only with the underlying claimant, but also expending precious resources fighting an insurer over coverage questions -- this effectively undercuts one of the primary reasons for purchasing liability insurance; and <u>third</u>, there is a real risk that, if the declaratory relief action proceeds to judgment before the underlying action is resolved, the insured could be collaterally estopped to contest issues in the latter by the results in the former. It is only where there is no potential conflict between the trial of the coverage dispute and the underlying action that an insurer can obtain an early trial date and resolution of its claim that coverage does not exist.

<u>Haskel, Inc. v. Superior Court</u>, 33 Cal. App. 4th 963, 979 (1995).

Here, a stay is not warranted because there is no risk of inconsistent factual determinations.  The factual issues to be litigated in the declaratory judgment action are entirely different from those to be litigated in the Consolidated Class Action. Plaintiff filed this declaratory judgment action seeking a declaration concerning its coverage obligations with respect to claims asserted by the Chip Claimants against Defendant.  The present action will involve a determination of the reasonableness of the settlements between Defendant and the Chip Claimants, whether Defendant breached its duties under the insurance policies and whether the terms of the policies cover Defendant's claims.

11

The Chip Claimants are not part of the Consolidated Class Action and the present case does not seek a declaration as to Plaintiff's coverage obligations for the Consolidate Class Action.  This is not an instance where Defendant will be required to fight a "two-front" war.  Further, Defendant's argument that the instant case should be stayed because it is concerned that it may be collaterally estopped from mounting certain defenses in the Consolidated Class Action is without merit.  The mere possibility of collateral estoppel does not justify a stay of the declaratory proceeding.  <u>Allstate Ins. Co. v. Gillette</u>, 2006 WL 997236, *4 (N.D. Cal).  Defendant may seek a protective order and move for filing under seal any documents that could be prejudicial to it in other litigation.  Accordingly, the Court denies Defendant's motion for a stay of this case.  Litigation relating to Defendant's duty to cooperate and its voluntary payments may proceed.

## CONCLUSION

For the foregoing reasons, the Court denies Defendant's motions to dismiss and stay.  (Docket Nos. 11 and 12).  Defendant shall file an answer within twenty days from the date of this order.

IT IS SO ORDERED.

Dated: 8/18/09

_____
CLAUDIA WILKEN
United States District Judge