IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.,

    Plaintiff,

  v.

NVIDIA CORPORATION,

    Defendant.
_____/

No. C 09-02046 CW

ORDER DENYING NATIONAL UNION'S MOTION FOR SUMMARY JUDGMENT

    This declaratory judgment action involves a dispute over whether NVIDIA Corporation has breached various clauses of the insurance policies it maintains with National Union Fire Insurance Company of Pittsburgh, PA (National Union). National Union has filed a motion for partial summary judgment as to NVIDIA's duty to cooperate. NVIDIA opposes the motion. Having considered oral argument and all of the papers submitted by the parties, the Court denies National Union's motion for summary judgment.

## BACKGROUND

    NVIDIA sells graphics processing units (GPUs) and media communication processors (MPCs). Computer manufacturers incorporate GPUs and MPCs into their final product. In recent years, many computer manufacturers and individual computer owners have complained to NVIDIA that their GPUs and MPCs were not working

properly.  Between September 12, 2008 and November 18, 2008, eight class action lawsuits were filed against NVIDIA about these products.  On February 25, 2009, United States District Court Judge James Ware consolidated the cases in this district under the caption The NVIDIA GPU Litigation, Case No. 08-04312, and a consolidated amended complaint was filed on May 6, 2009 (Consolidated Class Action).  National Union is providing legal representation for NVIDIA in the Consolidated Class Action.  The Consolidated Class Action purports to bring claims on behalf of all retail purchasers of computers equipped with a defective NVIDIA GPU or MCP.  In that case, the plaintiffs allege that NVIDIA knowingly sold defective GPU and MCP chips which, after installation in notebook computers, caused the graphics to malfunction.

    The current case concerns a related issue.  As a result of the malfunctions in GPUs and MCPs, the companies for whom NVIDIA designed and sold the GPUs and MCPs also began to receive complaints from end users of notebook computers and requests to repair the problem.  The parties refer to these companies as Chip Claimants.  On at least seven occasions, NVIDIA tendered to National Union notices of claims made by Chip Claimants against NVIDIA.  The claims sought defense, indemnity, compensation for repairs and extended warranties, and damages.  NVIDIA also requested that National Union waive conditions in the insurance policies that prevent any insured from voluntarily assuming any obligation or making any payment without National Union's consent.  This aspect of the policy is called a consent condition.  National Union did not agree to waive the consent conditions with respect to some of the claims.

2

National Union has requested detailed information about the nature, extent, timing and causes of the claims tendered by NVIDIA. Specifically, National Union has requested:

1. Records, including primary source data, showing the dates of repair and/or replacement for each affected notebook;

2. Records, including primary source data, showing the dates of failure of each affected notebook;

3. Records, including primary source data, showing the itemized cost of any repair and/or replacement for any notebook;

4. Records, including primary source data, showing what components were replaced, when, how and why;

5. Records, including primary source data, identifying and describing damage, if any, to computer components other than to the NVIDIA chip(s), including the nature and extent of the injury; and

6. NVIDIA'S estimated settlement proposal for each Chip Claimant, the basis for such estimate, and all documents supporting the estimate. With respect to already executed settlements, the basis for the settlement amount and a copy of all information possessed by NVIDIA at the time of executing such settlements.

Motion at 10. NVIDIA has supplied summary and secondary source data in response to the requests, but not primary source data. At this juncture, National Union has not consented to any settlements nor has it been permitted to participate in any settlement negotiations between NVIDIA and the Chip Claimants. To date, NVIDIA has not sought indemnification from National Union with respect to settlements that NVIDIA has unilaterally negotiated with some of the Chip Claimants. However, in an August 28, 2009 letter to National Union, NVIDIA stated that "to the extent that there are available limits under the National Union Policies after the resolution of the pending NVIDIA GPU Litigation, C 08-4312, NVIDIA currently does intend to pursue indemnification for the ODM and OEM

3

claims." Scalise Decl., Exh. 7.

In the present lawsuit, National Union seeks a declaration concerning its coverage obligations, if any, owed to NVIDIA with respect to claims arising from its product malfunctions. National Union asserts that it does not have a legal obligation to pay damages because the harm NVIDIA incurred does not constitute "property damage" as defined in the insurance policies described below. National Union also alleges that NVIDIA breached the "voluntary payments" and "cooperation" provisions of the insurance policies.

There are two relevant insurance policies at issue between the parties: Commercial General Liability Policy No. 721-8839 (CGL Policy) and Commercial Umbrella Liability Policy No. 9835530 (Umbrella Policy). The CGL Policy is subject to a limit of $1 million and the Umbrella Policy is subject to a limit of $25 million. The CGL Policy provides, in pertinent part,

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. . . . We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

Compl., Exh. 1 at 7. The CGL Policy and the Umbrella policy also list the insured's "duties in the event of an occurrence, offense, claim, or suit:"

> (c) You and any other involved insured must:
> (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
> (2) Authorize us to obtain records and other information;
> (3) <u>Cooperate with us in the investigation or settlement of the claim or defense against the "suit"</u>; and
> (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

4

|   |                                                                                                                                                      |
|---|------------------------------------------------------------------------------------------------------------------------------------------------------|
| 1 | (d)  No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than first aid, without our consent. |

Id. at 15, Exh. 2 at 17 (emphasis added).

The present motion concerns only the "cooperation" provision of the policies. National Union argues that NVIDIA's refusal to grant National Union access to the settlement process with Chip Claimants as well as myriad documents related to the settlements has violated NVIDIA's duty to cooperate.

## LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the

outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## DISCUSSION

A condition of an insurance policy requiring the cooperation and assistance of the insured in opposing a claim is an important aspect of a policy. Truck Ins. Exch. v. Unigard Ins. Co., 79 Cal. App. 4th 966, 976 (2000). Without cooperation and assistance, the insurer may be severely handicapped and unable to advance a defense. Valladao v. Fireman's Fund Ind. Co., 13 Cal. 2d 322, 328-39 (1939). These provisions "enable the [insurer] to possess itself of all knowledge, and all information as to other sources and means of knowledge, in regard to facts, material to [its] rights, to enable [it] to decide upon [its] obligations, and to protect [itself] against false claims." Truck Ins. Exch, 79 Cal. App. 4th at 976 (internal quotation marks and citation omitted).

The parties do not dispute that NVIDIA has a duty to cooperate under the insurance policy and that NVIDIA has cooperated to an extent. Rather, National Union is not satisfied with the extent of NVIDIA's cooperation and it asks the Court to enforce the duty to cooperate to require NVIDIA to turn over the requested documents and allow it to participate in settlement discussions.

The underlying cases involve numerous products liability claims arising out of allegedly defective NVIDIA chips. These allegedly defective chips are used in each of the Chip Claimants' notebook computers. The Chip Claimants have sought reimbursement from NVIDIA for all repair and replacement costs of the chips and defense and indemnification from third-party claims. National

Union wants to analyze the repair and replacement records to authenticate the Chip Claimants' claims and demands, and it wants information verifying the failures of the chips and confirming the type of damage caused by the failure of the defective chips. National Union also seeks the information upon which NVIDIA relied to execute its settlements with Chip Claimants.

Instead of providing this information, NVIDIA has compiled summaries of the Chip Claimants' claims, which include information such as the chip at issue and the date and the amount of the demand. NVIDIA has not provided National Union with primary source data, such as the actual complaint forms from notebook computer users, from which National Union can authenticate the failures and repairs of the allegedly defective NVIDIA chips. NVIDIA claims that it does not have this type of primary source information within its possession and that it would be too disruptive to its relationships with Chip Claimants and their customers to obtain this information from them.

Further, NVIDIA argues that it need not comply with the duty to cooperate because National Union "has essentially denied coverage" for the Chip Claims. Opposition at 9. However, National Union has not denied coverage for the Chip Claims. National Union has reserved its rights with respect to this coverage. In its reservation of rights letter, National Union stated, "[W]e have received only limited information regarding the nature and extent of the NVIDIA Chip Claims to date, and thus, we currently have insufficient information about the claims to provide you with a final coverage position under the National Union Policies." Falo Decl., Exh. B at 2.

Moreover, filing the instant declaratory judgment action does not constitute a denial of coverage. An appropriate course of action for an insurer that disputes coverage for an underlying claim is to seek a judicial ruling in a declaratory judgment action. <u>Montrose Chemical Corp. v. Superior Ct.</u>, 6 Cal. 4th 287, 301 (1993).

Nonetheless, the Court concludes that summary judgment on the duty to cooperate claim is not appropriate at this time. Although National Union has not received all of the information it requested from NVIDIA, NVIDIA has provided evidence of its efforts to cooperate with National Union. This motion and NVIDIA's opposition implicate what are essentially discovery disputes. National Union may pursue formal discovery from NVIDIA. To the extent NVIDIA cannot and/or will not provide relevant primary source information, National Union may propound written discovery requests on the relevant third parties for the information, after meeting and conferring with NVIDIA. If there is a dispute, the parties must schedule a discovery conference with Magistrate Judge Zimmerman.

## CONCLUSION

For the foregoing reasons, the Court denies National Union's motion for summary judgment. Docket No. 83.

IT IS SO ORDERED.

Dated: 01/11/10

_____
CLAUDIA WILKEN
United States District Judge